# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

WILBERT A. WASHINGTON,

        Plaintiff,

        v.                                           Case No. 10-C-0032

R. HEIDORN, M.D.,

        Defendant.

## DECISION AND ORDER

The plaintiff, Wilbert Washington, a state prisoner who is incarcerated at Green Bay Correctional Institution (GBCI), filed a *pro se* complaint under 42 U.S.C. § 1983. He was allowed to proceed on an Eighth Amendment claim that defendant Dr. Richard Heidorn was deliberately indifferent to the plaintiff's pain because he prescribed Ibuprofen instead of Vicodin for four months after a surgery. Now before the court is the defendant's motion for summary judgment.

## I. BACKGROUND

On June 7, 2009, the plaintiff's leg was broken during an altercation with another inmate. The injury was so severe that it required surgery, which was performed at St. Vincent Hospital in Green Bay, Wisconsin. The plaintiff's surgeon, Dr. Tressler, prescribed Percocet as a pain reliever. The plaintiff returned to the prison and was seen in the Health Services Unit (HSU) on June 9, 2009. Defendant Dr. Richard Heidorn prescribed Hydrocodone (the generic form of Vicodin) four times daily for ten days (two tablets each time for the first five days and one tablet each dose for the next five days). Dr. Heidorn also prescribed 400 mg of Ibuprofen three times daily as needed for five days and then 800 mg of Ibuprofen three times daily as needed for a month.

On June 11, 2009, the plaintiff was seen for a follow up. He was upset and wanted a wheelchair instead of crutches. Later that day, the plaintiff complained about not wanting to get up from bed to get meals or medication and wanted everything hand-delivered to him so he did not have to move. Dr. Heidorn advised that it was important for the plaintiff to move to prevent complications from the surgery.

Security reported on June 15, 2009, that they had witnessed the plaintiff taking the entire card of 400 mg Ibuprofen tablets. The plaintiff was brought to the HSU, and Dr. Heidorn ordered that he be taken to St. Vincent's emergency room. Dr. Heidorn also ordered that all of the plaintiff's medications be in crushed or liquid form.

The plaintiff had a follow-up appointment at the Green Bay Orthopedic Clinic on June 23, 2009. On June 24, 2009, consistent with the recommendation from the clinic, Dr. Heidorn ordered that the plaintiff continue non-weight bearing with the walker for two months and that the plaintiff see an orthopedist in six weeks.

At a blood draw on June 30, 2009, a nurse observed the plaintiff putting some weight on his right foot and instructed him not to do that. He was reminded again as he was leaving when he began pulling himself forward in his wheelchair with both feet. A correctional officer also told the nurse that the plaintiff had put some weight on his right leg getting back to his bunk.

In July 2009, the plaintiff was prescribed liquid Ibuprofen, 800 mg, three times daily as needed. On July 2, 2009, the plaintiff submitted a health service request (HSR) asking for "better pain medicine." He also submitted HSR forms on July 5, 2009, asking about pain medication side-effects and on July 9, 2009, requesting that the psychiatrist bring the plaintiff's medical record with him when he comes to see the plaintiff in segregation. In a HSR submitted July 12, 2009, the

plaintiff requested pain pills instead of liquid Ibuprofen and asked for a bag lunch at 8:00 p.m. when he takes his medication.

The plaintiff was seen on July 15, 2009. He complained about pain in his leg, and a nurse advised the plaintiff that he would always have pain and that non-steroidal anti-inflammatory drugs are the appropriate choice for pain. Dr. Heidorn avers that he would have given the plaintiff different advice. The plaintiff reported that the liquid Ibuprofen bothered his stomach and he again asked for a snack bag. He was told that he could have a packet of crackers with his evening medications. The nurse also said she would ask the doctor if the plaintiff could have crushed medication instead of the liquid Ibuprofen, and the plaintiff was agreeable to this. Dr. Heidorn was consulted on July 17, 2009, but he advised that the liquid or powder would affect the plaintiff's stomach the same way so he did not change the plaintiff's medication.

The plaintiff was seen in the segregation HSU for complaints of chest pain on July 20, 2009. His Ibuprofen was changed to crushed tablets per his request. On July 29, 2009, the plaintiff told a psychiatrist that he was having pain and that the medicine was not working. The same day, the plaintiff submitted a HSR complaining of pain and stating that the Ibuprofen was not helping him. In response, he was advised that he had an appointment with the orthopedic surgeon the next week.

In August 2009, the plaintiff was prescribed liquid Ibuprofen, 800 mg, three times daily as needed. On August 2, 2009, the plaintiff submitted a HSR indicating that his ankle was swollen and asking for the brand new tennis shoes he had in property. In response, the plaintiff was told that gym shoes are not allowed in segregation.

The plaintiff submitted an Interview/Information Request form asking about his pain medication. A response was sent on August 3, 2009, indicating that he had Ibuprofen available that should meet his needs.

3

On August 3, 2009, the plaintiff had a follow up appointment with Dr. Tressler. He was allowed to advance his weight bearing to weight bearing as tolerated, though Dr. Tressler recommended a cane to help the plaintiff bear weight on his right leg. Dr. Tressler prescribed Vicodin for pain relief and a follow up appointment was to be scheduled in six weeks. The plaintiff submitted a HSR the same day asking about a walking cane and the pain medication prescribed by Dr. Tressler. On August 5, 2009, a response was provided indicating that Dr. Tressler's orders were recommendations and that Dr. Heidorn would consider them and order what is needed.

On August 10, 2009, the plaintiff submitted another HSR asking about his pain medication and requesting to be seen by a doctor. On August 11, 2009, Dr. Heidorn prescribed the plaintiff liquid Ibuprofen, 800 mg, three times daily as needed for six months. In an August 13, 2009, HSR, the plaintiff questioned why he was receiving Ibuprofen instead of the Vicodin prescribed by Dr. Tressler. The response advised that the physician would consider the medications prescribed by the orthopedic doctor, as well as other factors such as the plaintiff's environment and his overdose history.

The plaintiff also submitted a separate Interview/Information Request on August 13, 2009, asking about a cane. He was advised that he could not have a cane in segregation. The plaintiff wrote a letter to Dr. Heidorn on August 14, 2009, which stated:

> I can'nt take the liquid Iburprofen it makes me very Ill and upset my stomach. We will have to think of another sollution or put me down for a appointment to see you soon and I need a pain pill not liquid pain medicine. I take pills from my psychiatrist doctor I refuse that liquid Iburprofen sending it back to HSU. I know you have other pain pills you can order Dr. Tressler wrote down for HSU to give me Vicodin pill I'm in a cell confined to myself there's no environment around me. plus all med's are on the medicine cart and I'm not trying to overdose myself anymore. [sic]

(Heidorn Aff., Ex. 1001, p. 000252.) However, Dr. Heidorn did not see the letter, which was sent to the HSU. If the letter had been something the nurses were concerned about, they would have consulted Dr. Heidorn verbally. On August 19, 2009, Dr. Heidorn indicated that the plaintiff could use liquid or crushed medications.

The plaintiff was seen in the segregation HSU for a requested sick call on August 26, 2009. He indicated that the Ibuprofen was causing him stomach upset. In response, Dr. Heidron prescribed Tylenol liquid, 650 mg, four times daily as needed for two months and discontinued the liquid Ibuprofen. On August 31, 2009, the plaintiff asked in a HSR why he had not yet received the Tylenol for pain in his leg. He was told that the Tylenol had been ordered from the central pharmacy and that he would receive it when it arrived.

In September 2009, the plaintiff was prescribed. Naproxen, 500 mg, two times daily, as well as liquid Tylenol, 650 mg, four times daily as needed. On September 8, 2009, the plaintiff submitted a HSR asking when he would be seen by Dr. Heidorn. He complained of pain in his leg and knee, and asked for a mattress because he was unable to sleep due to pain. A response indicated that the plaintiff would be seen "next week."

The plaintiff had an appointment with Dr. Heidorn on September 17, 2009. Dr. Heidorn noted that the plaintiff's wound was well-healed, but he also assessed the status of the fracture and planned for the plaintiff to continue to be followed by an orthopedist. Dr. Heidorn ordered a follow up with Dr. Tressler and prescribed Naproxen, 500 mg, two times daily as needed for six months.

The plaintiff submitted a HSR on September 20, 2009, complaining of pain in his right leg and knee and asking about physical therapy. He submitted another HSR on September 24, 2009, complaining of pain and requesting an appointment with the doctor. He was told an appointment was scheduled.

5

On September 29, 2009, the plaintiff saw Dr. Tressler at the Green Bay Orthopedic Clinic. Dr. Tressler recommended the removal of the screws in the plaintiff's leg, and plans were made for an outpatient surgery to remove the screws. On October 2, 2009, Dr. Heidorn ordered that the plaintiff eat nothing after midnight for surgery. The plaintiff returned from St. Vincent's emergency room on October 6, 2009, after the pins had been removed from his leg. Dr. Heidorn prescribed Vicodin four times a day for five days and ordered follow ups for the plaintiff with himself and Dr. Tressler. The plaintiff submitted a HSR on October 6, 2009, requesting a pain tablet after dinner. The response indicated that the plaintiff had an order for Vicodin.

The plaintiff used a walker to get to his appointment in the HSU on October 8, 2009. The plaintiff reported that his pain relief medication was effective. Dr. Heidorn noted that the plaintiff was doing well and that he wanted a cane. Dr. Heidorn extended the plaintiff's Vicodin prescription. Dr. Heidorn also saw the plaintiff on October 13, 2009, for a post-op follow up. Dr. Heidorn once again extended the plaintiff's Vicodin prescription and discontinued the liquid Acetaminophen. He also ordered a low bunk and low tier assignment for the plaintiff for six months and addressed the plaintiff's blood pressure.

The plaintiff continued to receive treatment and pain medication, with some complaints, through the rest of 2009 and much of 2010. However, his claims in this case are limited to the plaintiff's averments that he was in chronic pain daily from June to October 2009.

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011).

"Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### III. DISCUSSION

Defendant Dr. Richard Heidorn argues that he is entitled to summary judgment because he was not deliberately indifferent to the plaintiff's serious medical need. He maintains that the Vicodin prescribed by Dr. Tressler was only a recommendation, and that Dr. Heidorn took it into account when making his decision. However, Dr. Heidorn also took into account other factors, such as environment and the plaintiff's overdose history, and decided to prescribe Ibuprofen for the plaintiff's pain instead of Vicodin.

The plaintiff argues that a juror could reasonably believe that Dr. Heidorn's four month delay in providing the plaintiff with Vicodin constituted deliberate indifference. In reply, the defendant maintains that the choice of pain medication is a medical decision left to the decision of the treating physician.

In *Duckworth v. Ahmad*, 532 F.3d 675, 678-79 (7th Cir. 2008), the court set forth the legal standard for Eighth Amendment medical care claims:

> The states have an affirmative duty to provide medical care to their inmates. *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). And the upshot of this duty is that the "deliberate indifference to [the] serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'" and violates the Eighth Amendment's prohibition against cruel and unusual punishments. *Id.* at 104, 97 S.Ct. 285. To state a cause of action, a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent. *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts. *Id.* And although deliberate means more than negligent, it is something less than purposeful. *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The point between these two poles lies where "the official knows of and disregards an excessive risk to inmate health or safety" or where "the official [is] both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he ... draw[s] the inference." *Id.* at 837, 114 S.Ct. 1970. A jury can "infer deliberate indifference on the basis of a physician's treatment decision [when] the decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

The defendant stipulates that the plaintiff's condition constituted a serious medical need. Thus, the court must consider whether Dr. Heidorn was deliberately indifferent to the plaintiff's complaints of pain.

Neither the plaintiff's disagreement with Dr. Heidorn's medication choice nor a difference of opinion between physicians about which medication to prescribe supports a finding of deliberate indifference. Ultimately, the plaintiff disagrees with Dr. Heidorn's choice of pain reliever for him post-surgery. However, disagreement with medical professionals about treatment needs cannot sustain an Eighth Amendment claim under the deliberate indifference standard of *Estelle v. Gamble*, 429 U.S. 97 (1976). *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Not only was Dr. Heidorn not deliberately indifferent when he chose the plaintiff's prescription pain relief, he saw the plaintiff frequently and increased the dosage and/or changed the medication when the plaintiff complained of continued pain. Also, Dr. Heidorn did prescribe the generic equivalent of Vicodin for a ten day period immediately following the plaintiff's original surgery and again after a subsequent medical procedure to remove the pins from the plaintiff's legs. Although a different doctor may have chosen alternate pain medications for the plaintiff between June and October 2009, no reasonable jury could find that Dr. Heidorn was deliberately indifferent to the plaintiff's pain when he made prescription choices for the plaintiff during that time frame.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED** that the defendant's motion for summary judgment (Docket #26) be and hereby is **GRANTED**; and

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment dismissing this case.

Dated at Milwaukee, Wisconsin this 29th day of June, 2011.

BY THE COURT:

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge